# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| CONNIE REGULI and WENDY HANCOCK, | ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | **Case No. 3:24-cv-00541** |
| TRACY HETZEL, ESTATE OF KIMBERLY HELPER, MARY KATHERINE EVINS, LORI RUSS, DAVID O'NEILL and the CITY OF BRENTWOOD, | ) ) ) ) ) ) ) | **Judge Aleta A. Trauger** |
| Defendants. | ) |  |

## MEMORANDUM

Plaintiffs Connie Reguli and Wendy Hancock pursue numerous claims under 42 U.S.C. §
1983 and state tort law against various defendants relating to those defendants' involvement in the
investigation, indictment, prosecution, and conviction of the plaintiffs for state law felony
offenses—convictions that were ultimately reversed by the Tennessee Court of Criminal Appeals.[1]
The court has previously granted Motions to Dismiss filed by defendants Tracy Hetzel, the Estate
of Kimberly Helper, and Mary Katherine Evins. (Doc. Nos. 44, 68.) Now before the court is the
Motion for Judgment on the Pleadings (Doc. No. 55) filed by defendants Lori Russ, David O'Neil,[2]
and the City of Brentwood (collectively, the "City Defendants"). For the reasons discussed herein,

---

[1] *See State v. Hancock*, 678 S.W.3d 226 (Tenn. Ct. Crim. App. 2023); *State v. Reguli*, No.
M2022-00143-CCA-R3-CD, 2024 WL 913212 (Tenn. Ct. Crim. App. Mar. 4, 2024), *perm. app.
denied* (Tenn. July 18, 2024).

[2] David O'Neill's name is spelled thus in the caption of the Complaint. However, his last
name is spelled "O'Neil" in the body of the pleading and in this defendant's Answer. The court
presumes that "O'Neil" is the correct spelling and employs that form herein.

the motion will be granted, and this case will be dismissed in its entirety.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Reguli is a former attorney with a "long history of activism for reform in the judicial and executive branches of Tennessee government for family and children's rights." (Doc. No. 1, Compl. ¶ 19.) Plaintiff Hancock resides in Dekalb County, Tennessee and is the disabled single mother of three children, two of whom were still minors in 2018. (*Id.* ¶¶ 3, 19(n), 20.) While her children were still minors, Hancock was "repeatedly investigated" by the Tennessee Department of Children's Services ("DCS"), but none of these investigations resulted in the removal of her children from her custody until 2018. Reguli was her attorney at the time. (*Id.* ¶¶ 19(n), 22–24, 26.)

As relevant here, defendant Lori Russ was, at all times relevant to the Complaint, a detective with the Brentwood Police Department ("BPD"). O'Neil served as a captain of the BPD and was Russ's direct supervisor. (*Id.* ¶¶ 7, 8.) They are sued in both their individual and official capacities. The City of Brentwood is the municipality that operates the BPD.

### A.     The August 2018 DCS Investigation

The Complaint describes at great length the facts leading up to the issuance of an *ex parte* order of removal, obtained by an investigator with the Dekalb County DCS from the Smith County Juvenile Court Judge on Tuesday, August 14, 2018, which had the effect of removing Hancock's minor children from her custody and placing them in DCS custody pending the investigation and resolution of allegations of abuse or neglect by Hancock. It appears from the Complaint that Reguli, as Hancock's attorney, learned from the Dekalb County Juvenile Court Clerk late in the afternoon on Monday, August 13, 2018, that a removal petition had been filed against Hancock, though Reguli was unable to obtain a copy of it, or additional information about it, that day. On August 15, 2018, Reguli learned that the Smith County Juvenile Court Judge Michael Collins had

signed an *ex parte* removal order for Hancock's minor daughter, B.B., on August 14, 2018. (*Id.* ¶¶ 48–49.)

The Complaint alleges that the *ex parte* removal order was procedurally and substantively invalid and had never been properly served on Hancock or Reguli (*id.* ¶¶ 50, 52), but the fact remains that they knew about it. Nonetheless, Reguli met Hancock at a Comfort Inn hotel, where Hancock had been staying with B.B. to "relax," and took them both to her home in Brentwood, Tennessee, "to remain there until Reguli could contact Judge Collins." (*Id.* ¶ 51.) On Thursday, August 16, 2018, officers with the BPD appeared at Reguli's house to remove B.B. and hand her over to DCS. Following this event, both of Hancock's minor children were put in state custody. Reguli and Hancock labored for nine months to fight the "invalid" removal petition, while B.B. and her brother were shuffled from—as described in the Complaint—one "chaotic" and "distress[ing]" foster home placement to another. (*Id.* ¶¶ 57, 63–66.) Finally, in June 2019, DCS dropped the Hancock children off at their home and dismissed the August 13, 2018 petition. (*Id.* ¶¶ 71–72.)

### B.    The Investigation and Indictment of Reguli and Hancock

While the DCS proceedings were ongoing, defendant Tracy Hetzel, a lawyer with DCS who was involved in the removal of B.B. from Hancock's custody, had "already started her criminal investigation of Reguli and Hancock" in August 2018. (*Id.* ¶ 58.) She "used the juvenile court proceedings to obtain a secret subpoena" to obtain the records of the Comfort Inn, without revealing to Reguli that she had sought or obtained those records. (*Id.*) Hetzel also "obtained the audios of the voice messages Reguli left" and "wrote a narrative that she would use to open the investigation." (*Id.*) She obtained these records for the purpose of providing them to the Williamson County police officers and prosecutors so that they could "start the investigation on Reguli and Hancock." (*Id.*)

In September 2018, Hetzel "traveled to the Brentwood Police Department . . . , meeting with Russ, to start an investigation on Reguli and Hancock." (*Id.* ¶ 68.) The plaintiffs allege that, in December 2018, Russ used the criminal investigation as a "pretext" to obtain search warrants for Reguli's social media posts and phone records. (*Id.*) In January 2019, Reguli called the BPD to identify Russ's supervisor and was given O'Neil's name. (*Id.* ¶ 69.) She subsequently sent two letters to O'Neil, relaying her belief that Hetzel was "using the criminal process to gain an advantage in civil litigation." (*Id.*) She received a response to the second letter from BPD Chief Tommy Walsh on March 28, 2019, stating that the BPD "always followed the constitution" and that Reguli should contact Russ about her concerns. (*Id.*) By this time, "Russ had already turned over her investigation file for prosecution to" defendants Helper and Evins. (*Id.*) Defendants Helper and Evins were at all relevant times the District Attorney General and an Assistant District Attorney, respectfully, for the 21st Judicial District of Tennessee. (*Id.* ¶¶ 5–6.)

In June 2019, DCS closed the case against Hancock and returned her children to her. (*Id.* ¶¶ 71–72.) In July 2019, Russ informed Reguli that she had an Indictment for both Reguli and Hancock. (*Id.* ¶ 73; Doc. No. 1-1, Indictment.) They arranged a time for both plaintiffs to turn themselves in to the BPD. On that day, Reguli and Hancock were booked and processed. Reguli was released on her own recognizance, while Hancock was required to post a bond, and both plaintiffs remained under conditions of release pending trial. They did not receive a copy of the Indictment at that time. (Compl. ¶¶ 73–77.)

When Reguli finally received a copy of the Indictment several days later, she "immediately knew that there was a problem." (*Id.* ¶ 79.) The Indictment charged Hancock for "custodial interference," a Class E felony, and charged Reguli in two felony counts of accessory after the fact and one misdemeanor count of facilitation of a felony for custodial interference. (*Id.*) The

Indictment stated that

> Wendy Hancock, being the natural parent of [B.B.], a child younger than eighteen (18) years of age, . . . unlawfully, feloniously and knowingly, did detain said child within this state with the intent to violate a temporary or permanent judgment or court order regarding the custody or care of the child, in violation of Tenn. Code Ann. § 39-13-306 . . . .

(*Id.* ¶ 80; Doc. No. 1-1.) The charges against Reguli were premised upon Hancock's alleged custodial interference and used the same language. (*Id.*)

However, the actual language of the portion of the statute cited in the Indictment makes it a crime to detain a child "within this state or remove the child from this state *after the expiration of the noncustodial natural or adoptive parent or guardian's lawful period of visitation*, with the intent to violate . . . a temporary or permanent judgment or a court order regarding the custody or care of the child." (*Id.* ¶ 82 (quoting Tenn. Code Ann. § 39-13-306(a)(2) (2016)).)[3] The italicized portion of the statutory language was omitted from the Indictment.

The plaintiffs allege that "District Attorneys Kimberly Helper and Mary Katherine Evins purposefully excluded language from the statute" defining the offense of custodial interference and that, in doing so, they intentionally "eliminat[ed] an essential element of the crime" from the Indictment—namely, the requirement that a noncustodial parent detain a child after the expiration of the noncustodial parent's "lawful period of visitation"—to obtain an indictment "in deliberate disregard of the constitutional rights of the Plaintiffs to be free of malicious prosecution. (*Id.* ¶ 81.)

---

[3] The relevant portion of the statute states in full:

It is the offense of custodial interference for a natural or adoptive parent, step-parent, grandparent, brother, sister, aunt, uncle, niece, or nephew of a child younger than eighteen (18) years of age to . . . [d]etain the child within this state or remove the child from this state after the expiration of the noncustodial natural or adoptive parent or guardian's lawful period of visitation, with the intent to violate the rightful custody of a mother as defined in § 36-2-303, or a temporary or permanent judgment or a court order regarding the custody or care of the child[.]

Tenn. Code Ann. § 39-13-306(a)(2) (2016).

Regarding the City Defendants, the plaintiffs assert that

> Reguli knew at the time of the alleged offense . . . that no crime had been committed. Now, Reguli realized that the defendants, Williamson County District Attorneys Kim Helper, and Mary Katherine Evins, and Brentwood Police Lori Russ and David O'Neil, had intentionally manipulated the law and eliminated an essential element of the crime to achieve a constitutionally defective indictment and false arrest of Reguli and Hancock.

(*Id.* ¶ 83.)

The plaintiffs also allege that Russ "used the fraudulent investigation to obtain the private records of Reguli and Hancock," specifically by obtaining search warrants on December 8, 2018 by "falsely" stating in the affidavit in support of the warrant that there was probable cause for the crime of custodial interference. (*Id.* ¶ 88.) With this search warrant, Russ obtained all of Reguli's Facebook posts, comments, and private messages from August 1, 2018 through December 2018, as well as "addresses, phone numbers and email accounts." (*Id.*) The plaintiffs allege "[u]nder information and belief" that "Hetzel and Evins stayed in constant contact with Russ" and that "Hetzel wanted Russ to obtain Reguli's social media content" so that she could "try to 'catch' Reguli talking about the juvenile court case" in violation of an order issued by the juvenile court judge. (*Id.*) This plot failed, however, because Reguli never violated the court order. (*Id.* ¶ 89.)

The plaintiffs allege that "Helper, Evins, O'Neil, and Russ knew that the only way to indict Reguli and Hancock was to drop language from the statute that referenced the *expiration of a lawful period of visitation*" and that Helper and Evins together drafted the Indictment to omit that element. (*Id.* ¶ 90.)

## C.    The Trials and Appeals

The charges against Hancock and Reguli were severed and tried separately, with Hancock's trial going first. Evins was the prosecutor for the State of Tennessee in both trials. The presiding judge denied Hancock's motion to dismiss the Indictment based on its omission of part of the

statutory language. Prior to trial, Evins admitted that there would be no evidence that Hancock had detained her child "after the expiration of the noncustodial natural or adoptive parent or guardian's lawful period of visitation" but maintained that it would nonetheless be a jury question as to whether the defendant violated a visitation order. (*Id.* ¶ 92.) The judge initially observed that whether Hancock violated a visitation order would not be a jury question if, in fact, there was no evidence that such a visitation order even existed. (*Id.*) However, the judge then went further and unilaterally "modified the pattern jury instructions [by] removing the 'expiration of a lawful period of visitation' language" from the instructions that would be provided to the jury in Hancock's trial.[4] (*Id.* ¶ 94.)

Hancock's case proceeded to trial. Based on the flawed jury instruction, Hancock was convicted on one count of custodial interference, a Class E felony, and received a two-year suspended sentence. (*Id.* ¶¶ 103, 105.) Her motion for a new trial was denied. (*Id.* ¶ 115.)

Reguli's attorney moved to continue Reguli's trial until after Hancock's appeal, knowing that, if Hancock's conviction were overturned, Reguli could not be convicted of facilitating or being an accessory after the fact. That motion was denied, but the trial date was ultimately postponed until April 2022. (*Id.* ¶ 111.)[5]

---

[4] According to the Tennessee Court of Criminal Appeals decision reversing Hancock's conviction, both the defense and the State had filed substantially similar proposed jury instructions that "mirrored the pattern jury instructions" and included, as one of the elements of the offense, the requirement that the defendant "detained within the State of Tennessee a child younger than eighteen (18) years of age *after the after the expiration of the non-custodial natural parent's lawful period of visitation*." *State v. Hancock*, 678 S.W.3d 226, 237 (Tenn. Ct. Crim. App. 2023) (emphasis in original) (quoting Tenn. Pattern Jury Instr. Crim. 8.04).

[5] Reguli complains that the timing of the trial assured that she would lose her bid to win the Republican primary nomination for Williamson County Juvenile Court Judge, for which she had previously qualified, and that part of the purpose of the prosecution was to humiliate her and shut down her election bid. (Compl. ¶¶ 111, 117, 139.)

Although he initially denied Reguli's recusal motion, the judge who had presided over Hancock's trial spontaneously recused himself from Reguli's case, and the charges against her proceeded to trial before a different judge. (*Id.* ¶¶ 114.) Russ testified at Reguli's trial that she met with Hetzel, Evins, and Captain O'Neil in October 2018 to go over the evidence Hetzel had collected, at which point Russ and O'Neil decided to open their own investigation. (*Id.* ¶ 123.) Russ turned her investigative file over to the District Attorney's office in February 2019. (*Id.*)

The same faulty instruction defining the offense of custodial interference used in Hancock's trial was also used in Reguli's. (*Id.* ¶ 127.) Based on that instruction, Reguli was convicted on April 20, 2022, and her sentencing hearing was scheduled for June 24, 2022. (*Id.* ¶ 128.) Russ testified at the sentencing hearing, admitting that she obtained a search warrant for Reguli's Facebook account because "Reguli said bad things about her and the Brentwood Police Department" and she "wanted to know what [Reguli] was personally saying about her." (*Id.* ¶ 141.) None of the social media evidence obtained by Russ was used during the prosecution of Reguli or Hancock. (*Id.*) Based on Russ's testimony, Reguli was sentenced to two years' probation and thirty days of incarceration. (*Id.* ¶ 144.) Her motion for a new trial was denied, but she remained released on her own recognizance pending the appeal. (*Id.* ¶ 147.) After Hancock's conviction was overturned on appeal in May 2023, the Tennessee Court of Criminal Appeals issued an order vacating Reguli's conviction on March 4, 2024.[6] (*Id.* ¶ 156.) By this time, Reguli's entire career

---

[6] Hancock's conviction was reversed based on the appellate court's conclusion that the language of the jury instruction crafted by the trial judge omitted an essential element of the offense of custodial intervention set forth in Tenn. Code Ann. § 39-13-306(a)(2) (2021)—specifically, the requirement that "the defendant detained within the State of Tennessee a child younger than eighteen (18) years of age after the expiration of the non-custodial natural parent's lawful period of visitation." *Hancock*, 678 S.W.3d at 237. In Reguli's appeal, the state conceded that the trial court's instruction was "prejudicially erroneous," and the court vacated the conviction on the same grounds. *State v. Reguli*, No. M2022-00143-CCA-R3-CD, 2024 WL 913212, at *6 (Tenn. Ct. Crim. App. Mar. 4, 2024), *perm. appeal denied* (Tenn. July 18, 2024).

and livelihood had been destroyed, and both plaintiffs had been psychologically traumatized by the ordeal. (*Id.* ¶¶ 157–59.)

The plaintiffs assert that, in "initiat[ing] this investigation," Russ, along with defendants Helper, Evins, and Hetzel, "abused their power and position to 'get even' with Reguli." (*Id.* ¶ 164.) Russ and O'Neil purportedly could have chosen at any time not to pursue the investigation and could have told the other defendants that no crime had occurred, but the "gross negligence, reckless disregard for the law and civil rights of citizens, and the arrogant temperament of Russ drove the investigation." (*Id.* ¶ 165.) O'Neil "approve[d] the investigation" and "direct[ed]" it to the prosecutors, despite allegedly "knowing that no crime had occurred." (*Id.*)

### D. The Claims in this Case

Counts I through III of the Complaint are premised upon 42 U.S.C. § 1983 and assert claims for violations of the Fourth Amendment characterized as malicious prosecution (Count I) (Compl. ¶¶ 187–90), "deprivation of liberty without probable cause" (Count II) (*id.* ¶ 192), and fabricating evidence and "knowingly manufactur[ing] probable cause" (Count III) (*id.* ¶¶ 195, 172 [sic]).[7]

---

As the Tennessee Court of Criminal Appeals noted, however, the Tennessee legislature, like the trial judge, was persuaded that the conduct in which Hancock and Reguli had engaged *should* be deemed illegal. The definition of the offense of custodial interference was modified effective July 1, 2023 to include language making it unlawful for a parent (or other custodian) of a child to "[h]arbor or hide the child within or outside this state, knowing that the child has been placed in the custody of the department of children's services pursuant to a protective custody order or an emergency custody order entered by a court. It is not a defense to a violation of this subdivision (a)(6) that the person harboring or hiding the child has not been served with an actual copy of a protective custody order or emergency custody order." Tenn. Code Ann. § 39-13-306(a)(6) (2023).

[7] In the Complaint, paragraph 195 is followed by a paragraph numbered 172, instead of 196. Each paragraph thereafter is numbered consecutively from 173 through 210 (with some omissions), meaning that there are two sets of paragraphs numbered 172 through 195. The court refers to the Complaint by the original paragraph numbers, using [sic] to indicate the misnumbered set.

Counts IV, V, and VI assert claims under § 1983 based on the individual defendants' purported violations of the plaintiffs' substantive due process rights protected by the Fourteenth Amendment. The plaintiffs expressly concede that Counts IV, V, and VI should be dismissed as to defendants Russ and O'Neil. (Doc. No. 62 at 1–3.) Those counts will be dismissed without discussion.

Count VII states that defendants Russ and O'Neil (along with Hetzel, Evins, and Helper) engaged in a conspiracy to violate the plaintiffs' constitutional rights and that each individual defendant committed an overt act in furtherance of the "conspiratorial objective." (*Id.* ¶ 190 [sic].)

Counts VIII and XI articulate claims under state law for malicious prosecution and conspiracy to commit the same tort, with respect to which the plaintiffs invoke the court's supplemental jurisdiction. Count XII is asserted against the City of Brentwood only and alleges that the City of Brentwood is liable under 42 U.S.C. § 1983 for Russ's and O'Neil's actions "under [a] ratification theory." (*Id.* ¶¶ 209–10 [sic].)

The plaintiffs have now expressly conceded that Counts IX and X, for intentional infliction of emotional distress and abuse of process, should be dismissed. (Doc. No. 62 at 4.) Those claims will be dismissed without discussion.

The City Defendants answered the Complaint (Doc. No. 28), denying liability and asserting various affirmative defenses, including qualified immunity, state law immunity, and the statute of limitations. (Doc. No. 28.) After the court ruled on the other defendants' motions, the City Defendants filed their Motion for Judgment on the Pleadings and supporting Memorandum of Law. (Doc. Nos. 55, 56.) The plaintiffs oppose the motion, except with respect to Counts IV, V, VI, IX, and X. (Doc. Nos. 62, 63.) The City Defendants filed a Reply in further support of their motion (Doc. No. 64), and the plaintiffs, with permission, filed a Sur-reply (Doc. No. 66).

## II.    STANDARD OF REVIEW

The standard for resolving a motion for judgment on the pleadings under Rule 12(c) mirrors the standard applied to motion to dismiss for failure to state a claim under Rule 12(b)(6). *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). The "primary distinction" between a Rule 12(b)(6) motion and a Rule 12(c) motion is "one of timing." *Prudential Ins. Co. of Am. v. McFadden*, 504 F. Supp. 3d 627, 632 (E.D. Ky. 2020) (citation omitted).

In ruling on a motion to dismiss under either Rule 12(c) or Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When presented with a Rule 12(c) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Consideration of extrinsic materials need not convert a motion to dismiss into a motion for summary judgment, "so long as [the materials] are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett*, 528 F.3d at 430); *see also* 5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. updated Apr. 2022) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment.").

"[W]hen evaluating an affirmative defense in a motion to dismiss, a court must . . . only look to the facts alleged in the plaintiff's complaint, albeit alongside the legal elements of the affirmative defense raised in the defendant's motion to dismiss." *Goins v. Saint Elizabeth Med. Ctr.*, 640 F. Supp. 3d 745, 751 (E.D. Ky. 2022) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). "If the elements of an affirmative defense are met by the factual allegations contained in the complaint, then the district court may grant the motion to dismiss." *Id.*; *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 784 (6th Cir. 2015) ("Where an affirmative defense appears 'clearly on the face of the complaint,' however, a court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim.").

## III.    DISCUSSION

### A.    Federal Claims Under § 1983

To succeed on their claims under § 1983, each plaintiff must show: "(1) that [she] was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted). The City Defendants concede that the Complaint sufficiently alleges that Russ and O'Neil were acting under the color of state law at all relevant times. (Doc. No. 56 at 9.) They contend, however, that the Complaint fails to plausibly allege facts showing that Russ or O'Neil violated the plaintiffs' Fourth Amendment rights. Alternatively, they assert that they are entitled to qualified immunity, because the Complaint fails to establish that either defendant violated a constitutional right that was clearly established at the time of the underlying events. Finally, they argue that the Complaint fails to state a claim for municipal liability against the City, because there is no underlying constitutional violation.

#### 1.    *Malicious Prosecution (Count I)*

##### a)    *Elements of the Claim*

Count I asserts a claim for malicious prosecution under the Fourth Amendment. A malicious prosecution claim requires proof of the following elements:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)). At the same time, however, the Sixth Circuit has embraced as a "general rule" the premise that "the finding of an indictment, fair upon its face, by a properly constituted grand

jury, conclusively determines the existence of probable cause." *Robertson*, 753 F.3d at 616 (citations omitted). This presumption may be overcome if the defendant police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood," and "such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305 (citations omitted). More specifically, the Sixth Circuit holds that the grand-jury presumption of probable cause may be rebutted if:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).

*King*, 852 F.3d at 587–88.

> b)    The Parties' Positions

The defendants argue that a police officer cannot be liable for malicious prosecution for "merely turning over truthful material to the prosecution" and that the Complaint fails to allege "any kind of blameworthiness" on the part of Russ or O'Neil. (Doc. No. 56 at 10–11 (citations omitted).) Specifically, they assert that the Complaint alleges only that Russ initiated an investigation into the plaintiffs in October 2018, after meeting with Hetzel and Evins, and then turned over her investigative file to the District Attorney's office in February 2019. (*Id.* at 11 (citing Compl. ¶ 123).) And O'Neil is alleged only to have attended the meeting with Russ, Hetzel, and Evins in October 2018 and reviewed the investigative file before it was turned over to prosecutors. (*Id.* (citing Compl. ¶¶ 123, 190(1)).) The City Defendants also argue that the Complaint fails to plausibly rebut the presumption of probable cause created by the Indictment.

In response, the plaintiffs argue that a violation of Tenn. Code Ann. § 39-13-306(a)(2) required the detention of a child "after the expiration of the non-custodial natural parent's lawful period of visitation"; that this was "an essential element of the alleged crime"; that there was never proof in the record that Hancock was the noncustodial parent whose lawful visitation period had expired; and, "[i]f there was no crime, it follows that there was no probable cause." (Doc. No. 63 at 12 (quoting *Hancock*, 678 S.W. 3d at 237).) They also insist that the finding of probable cause in this case occurred because Russ failed to disclose to the grand jury that there was no visitation order, a "material omission." (*Id.* at 13.) They also assert that Russ omitted from the investigative report (which O'Neil allegedly approved) the fact that no visitation order existed that Hancock violated. (*Id.* at 16.)

### c) *Analysis—The Claim Against Russ*

As an initial matter, to the extent the plaintiffs' claim against Russ is based on her having testified falsely (or conspired to have testified falsely) before the grand jury, Russ is entitled to absolute immunity. In *Rehberg v. Paulk*, 566 U.S. 356 (2012), the Supreme Court held that officers who testify before a grand jury enjoy absolute immunity for their testimony, even if they intentionally testify falsely or conspire with others to testify falsely. *Id.* at 369–70. As the Sixth Circuit has explained, however, *Rehberg* does not foreclose a plaintiff's ability to sue a grand jury witness for malicious prosecution for actions that took place "prior to, and independent of, [the witness's] grand jury testimony." *King*, 852 F.3d at 586. Thus, Russ is not immune from liability for actions taken prior to the grand jury proceeding. The plaintiffs, therefore, have focused their attention on Russ's investigative report.

Most of the caselaw on which both parties rely that address whether *omissions*—as opposed to affirmatively false statements or the fabrication of evidence—can overcome the grand-jury presumption involve the omission or mischaracterization of material evidence within police

officers' knowledge. Thus, for example, in *Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017), the § 1983 plaintiff overcame the probable-cause presumption (at the motion-to-dismiss stage) where he alleged that law enforcement's DNA analyst labeled the results of a "clearly" exonerative DNA test as "inconclusive." *Id.* at 480–82. In *King*, the Sixth Circuit reversed summary judgment for the defendant law enforcement officer who spearheaded an investigation targeting the plaintiff as the lead suspect in a cold murder case. In that case, the defendant officer sought a search warrant for the plaintiff's home with strictly circumstantial evidence that the officer allegedly knew could not support probable cause, because a warrant application backed by the same facts had been denied seven years earlier. *Id.* at 583. In addition, the officer's affidavit did not mention either the overtly exculpatory facts and forensic evidence revealed in the initial investigation or the additional exculpatory evidence his own investigation had revealed. *Id.* at 574. And, despite his discovery of that additional exculpatory forensic evidence, the defendant officer then sought an indictment, naming the plaintiff as the victim's killer in a report to the state prosecutor. *Id.* at 574–75. *See also Stillwagon v. City of Del.*, 747 F. App'x 361, 373 (6th Cir. 2018) (affirming the denial of summary judgment on malicious prosecution claim based on the defendant police officer's numerous "omissions and falsehoods in his investigation report that was later submitted to the grand jury").

However, Sixth Circuit law on the question of whether *omissions* standing alone may give rise to a malicious prosecution claim is somewhat unsettled. In *Artuso v. Felt*, No. 23-3035, 2024 WL 495763 (6th Cir. Feb. 8, 2024), the plaintiff alleged that the police officers involved in the investigation that led to his arrest failed to analyze cell phone call logs and housing inspection records that the police had obtained during their investigation into rape allegations against the plaintiff and then "recklessly or knowingly omitted those same records from the investigative file

that [the lead detective] turned over to the county prosecutor." *Id.* at \*3. The plaintiff argued that, with the benefit of those call logs and inspection records, the grand jury might not have indicted him and that this issue created a material factual dispute that precluded summary judgment for the defendants.

In addressing his appeal following summary judgment for the defendants, the Sixth Circuit observed, first, that it was not clear in this circuit whether these investigative omissions qualified as "false statements" or "fabricated evidence" for purposes of the first prong of the *King* inquiry. *See id.* (comparing *Jones v. Clark Cnty.*, 690 F. App'x 334, 336 (6th Cir. 2017) (finding malicious prosecution action sufficiently pleaded where the plaintiff alleged that the defendant officer "misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence"), with *Lester v. Roberts*, 986 F.3d 599, 609 (6th Cir. 2021) (noting that law enforcement's purported omission of exculpatory evidence to the grand jury "may not suffice to defeat [the probable-cause] presumption")).

The court in *Artuso* further found that, even if the plaintiff were able to overcome the presumption of probable cause arising from his indictment based on omissions rather than affirmatively false statements, it also remained unclear whether he could show that the defendants' probable cause finding "violated clearly established law." *Id.* (citing *Lester*, 986 F.3d at 608). The court recognized that, while "the right to be free from prosecution absent probable cause" was "'clearly established' in this circuit," it was far less obvious that the plaintiff would be able to show that the "'body of relevant case law' contains 'a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment'" *Id.* (first quoting *King*, 852 F.3d at 582–83; and then quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)). Ultimately, the Sixth Circuit did not reach either of these questions in *Arturo*, finding instead that, even if the withheld

records had been produced, the evidence actually presented to the grand jury was "more than enough" to establish probable cause. *Id.* at *3. In *Jones*, the Sixth Circuit reversed the dismissal of malicious prosecution claims against a police officer, where the plaintiff alleged that the defendant police officer "misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence, namely that [the plaintiff's] electronic devices contained no pornography." *Jones*, 69 F. App'x at 336. If the police officer had actually investigated the devices seized by the police, he would have discovered that they did not contain pornography. *Id.*

Here, as set forth above, the malicious prosecution claim against Russ turns upon Russ's failure to highlight in the Case Summary or investigative report the precise crime being investigated, the elements of that offense, and the lack of evidence to support a particular element of that offense. The plaintiffs do not allege that Russ recklessly failed to verify whether Hancock had detained the child past the expiration of a period of visitation, and there is no contention that the prosecutors were misled by the police to believe that Hancock had violated a visitation order.[8] Instead, the plaintiffs allege that Russ intentionally or recklessly pursued the investigation of a crime—and purportedly influenced the decision to prosecute that crime—despite actual knowledge that a material element of that crime was missing.

The above-referenced cases do not provide clear guidance for how to apply *King* in this situation, but the first element of *King*'s test for overcoming the grand-jury presumption is that a law enforcement officer either "knowingly or recklessly makes *false statements* (such as in affidavits or investigative reports) or *falsifies or fabricates evidence*." *King*, 852 F.3d at 587

---

[8] The Indictment itself did not charge Hancock with detaining her child after the expiration of a visitation period, and nothing in the record suggests that prosecutors believed that she was a non-custodial parent who had detained the child after the expiration of a lawful period of visitation.

(emphasis added). The plaintiffs do not allege that Russ made any affirmatively false statements in her investigative report (or elsewhere) or that she falsified or fabricated evidence. Taken at face value, *King* suggests the plaintiff's malicious prosecution claim founders on this rock. The second element of *King* is whether such false statements and fabricated evidence, "*together with any concomitant misleading omissions*, are material to the ultimate prosecution of the plaintiff." *Id.* (emphasis added). While the plaintiffs have pointed to an omission, it is not paired with "concomitant" false statements or fabricated evidence and no suggestion that this omission was actually misleading, unlike in *Jones*. Under these circumstances, the court finds that the Complaint fails to state a colorable malicious prosecution claim against Russ, as it is based, not on a fraudulent omission or affirmative misstatement, but on Russ's alleged failure to highlight for prosecutors the absence of evidence on one element of the charge of investigation.[9]

Even if Russ's purported knowledge that she lacked probable cause were sufficient to overcome the grand jury's finding, the court also finds that she would be entitled to qualified immunity. "[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). "Although an officer's 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12." *Id.* (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). That said, a police officer will be shielded by qualified immunity unless her conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Abdallah*, 131 F.4th 432, 444 (6th Cir. 2025) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When

---

[9] The prosecutors, of course, are entitled to prosecutorial immunity for all actions taken in their prosecutorial capacity, as this court has already found.

qualified immunity is raised in response to a motion to dismiss, "the court must determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Back v. Hall*, 537 F.3d 552, 555–56 (6th Cir. 2008)).

While the plaintiffs assert that their Fourth Amendment right not to be arrested or prosecuted without probable cause was clearly established when they were indicted, they have not pointed to any decision by the Sixth Circuit or the Supreme Court addressing a situation in which a defendant police officer was found liable for malicious prosecution based on her failure to clearly identify the offense of investigation or the elements of that offense in her investigative summary or failure to point out the non-existence of facts to support one of the elements of the offense, but *without* fabricating evidence or making any false representations. The Sixth Circuit cases addressing omissions as a potential basis for malicious prosecution have focused on recklessly flawed investigations that failed to *uncover* the absence of critical evidence—the allegedly reckless failure to analyze the defendant's devices, for example, in *Jones v. Clark County*, which would have revealed the absence of evidence of child pornography, and the allegedly reckless failure to analyze existing cell phone call logs and housing inspection records that might have contained exculpatory evidence, in *Artuso v. Felt*. They have also focused on the misleading effect of these omissions.

Here, viewed in the light most favorable to the plaintiffs, the facts in the Complaint indicate only that Russ conducted an investigation and turned over her investigation files to the prosecutors. She did not fabricate evidence; she did not falsely claim to have evidence that did not exist; she did not mislead the prosecutors into believing that Hancock had detained her child after the expiration of a visitation period. The challenged omission is simply the failure to *point out the*

*absence of evidence* on a particular element of the investigated offense, but without otherwise suggesting that such evidence might exist. The plaintiffs have not pointed to any caselaw holding that police officers are required to point out to prosecutors the absence of supporting evidence. As a matter of logic, a failure to point out the absence of evidence presumptively suggests that such evidence does not exist. This type of omission is a far cry from failing to reveal the existence of evidence that *does* exist or even the failure to analyze existing evidence. Moreover, any reasonable police officer would have presumed that it was the prosecuting attorney's job to verify the existence of sufficient evidence to support all of the necessary elements of a particular offense before presenting the charge to the grand jury. In the absence of controlling law to the contrary, the court cannot find that Russ, by omitting to point out an absence of evidence, committed "acts that violated clearly established law." *Rondigo*, 641 F.3d at 681. In addition to finding that the Complaint fails to state a colorable malicious prosecution claim against her, the court also finds that, even if it does, she is entitled to qualified immunity.

d)      *The Claim Against O'Neil*

The claim against O'Neil hinges on his being present at the October 2018 meeting, authorizing Russ to investigate, and reviewing the investigation file before it was turned over to the District Attorney's office. (*See* Compl. ¶ 8 ("[O'Neil's] active participation, encouragement, and approval for prosecution amounted to ratification as a final policy maker in his supervisory capacity.").) The Complaint alleges O'Neil's knowledge and participation in the alleged conspiracy to engage in malicious prosecution in a wholly conclusory fashion. (*See, e.g.*, *id.* ¶ 164 ("O'Neil would approve the investigation for prosecution and direct it to Helper and Evins knowing that no crime had occurred.").)

In the Sixth Circuit, a plaintiff must plead a supervisor's knowledge of subordinates' constitutional violations in order to hold that supervisor liable for implicit authorization, approval,

or knowing acquiescence in those violations." *Venema v. West*, 133 F.4th 625, 634 (6th Cir. 2025). Here, the conclusory assertions of his knowledge and approval, without actual facts, are likely insufficient to establish his personal liability under § 1983. Regardless, having found that the Complaint fails to state a colorable malicious prosecution claim against Russ, the court also finds that it fails to state a claim against O'Neil. *Accord Griffith v. Franklin Cnty.*, 975 F.3d 554, 579 (6th Cir. 2020) ("[A] plaintiff cannot establish a claim for supervisory liability without establishing an underlying constitutional violation by a supervised employee.") Additionally, the court also finds, for the same reasons as those set forth above, that O'Neil is entitled to qualified immunity.

### e) The City

A municipality is not entitled to qualified immunity, *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) (citations omitted), but, for a city to incur liability under § 1983, the plaintiff must show that the municipality was responsible for a "policy or custom" that inflicts a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, "[t]o prove a *Monell* claim, plaintiffs must show that a government official violated their constitutional rights and that a municipal policy or custom is responsible for that violation." *Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 WL 2135407, at *5 (6th Cir. May 13, 2024) (citing *Monell*, 436 U.S. at 694). "[W]here the specified officer is found to be constitutionally blameless, a *Monell* claim will fail." *Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Because the court finds that the Complaint fails to state a colorable malicious prosecution claim against Russ or O'Neil, the malicious prosecution claim against the City is also subject to dismissal.

### 2. Deprivation of Liberty (Count II)

It is unclear how, exactly, the plaintiffs' "deprivation of liberty" claim differs from their

malicious prosecution claim, insofar as the deprivation of liberty they allege took place when, after the Indictments were issued, they turned themselves in for arrest and booking. The only named defendant alleged to have been involved in the arrest and booking process is Russ. (*See* Compl. ¶¶ 73–74.)

The Sixth Circuit has explained that "malicious prosecution under the Fourth Amendment . . . encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). "The tort of malicious prosecution is entirely distinct from that of false arrest, as the malicious-prosecution tort remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (quoting *Sykes*, 625 F.3d at 308) (emphasis in original). False arrest (or false imprisonment), on the other hand, pertains to a detention without probable cause *prior* to the institution of legal process. *See Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) ("To prevail on a false arrest claim under § 1983, 'a plaintiff [must] prove that the arresting officer lacked probable cause to arrest the plaintiff.'" (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).

In ruling on defendant Hetzel's Motion to Dismiss, the court found that the plaintiffs' deprivation of liberty claim simply alleges one of the elements of their malicious prosecution claim—the deprivation of liberty—and elaborates upon the damages the plaintiffs suffered as a result of that deprivation of liberty. Accordingly, the court found that Count II does not state a claim independent of the malicious prosecution claim set forth in Count I. (*See* Doc. No. 43 at 29.)

The City Defendants now argue that Count II is either indistinguishable from Count I or, insofar as it asserts a false arrest claim, it is time-barred. (Doc. No. 56 at 12–14.) Now, in an attempt to avoid dismissal of the same claim as asserted against Russ, the plaintiffs argue that

Count II sets forth a malicious prosecution claim based on a "continued detention after release" theory. (Doc. No. 63 at 20.)

The court again finds that any continuing deprivation of liberty following their Indictment constitutes part of the damages the plaintiffs suffered from the alleged malicious prosecution and that they have not actually alleged a new event or new injury that gave rise either to a false arrest claim or a wholly separate malicious prosecution claim. This claim is subject to dismissal (as to all defendants) for the same reasons as Count I.[10]

### 3. Fabricated Evidence (Count III)

Count III is premised upon the allegation "all defendants"

> knew that the presentment made to the grand jury materially omitted any evidence of a visitation order that provided for the "expiration of a lawful period of visitation" as required by statute for the purpose of criminalizing the plaintiffs. Hetzel never gave a visitation order to Russ, Evins, and O'Neil. . . . This was a knowing and intentional[] omission intended to influence the jury and convict the Plaintiffs . . . .

(Compl. ¶ 172 [sic].) The plaintiffs specify that this claim is premised upon an alleged violation

---

[10] The Sixth Circuit has recognized that a malicious prosecution claim may be based on, for example, the "with[holding] of exculpatory information in order to continue [a] Plaintiff's detention without probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *see also Jones v. Clark Cnty.* ("*Jones II*"), 959 F.3d 748, 759 (6th Cir. 2020) ("recognizing the 'subset of malicious prosecution claims which allege continued detention without probable cause'" (quoting *Gregory*, 444 F.3d at 750)), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022); *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (holding that "the § 1983 version of malicious prosecution is not limited to the institution of proceedings; it can also support a claim for continued detention without probable cause" (citations omitted)). But, to state this type of malicious prosecution claim, the plaintiffs would need to allege that something new happened, or some new exculpatory evidence was revealed, that changed the probable cause equation and made their continued detention (or, in their case, conditions of release) unconstitutional. *See Jones II*, 959 F.3d at 759 (reversing summary judgment based on the existence of "genuine issues of material fact as to whether probable cause for [the plaintiff's] continued detention dissolved once [the defendant] received the results of the forensic examination"—after the plaintiff had been indicted—confirming that his devices did not contain any child pornography). In this case, the plaintiffs allege only their continued detention as a result of having been indicted in the first place but no intervening event that changed the probable cause analysis.

of their Fourth Amendment rights. (Compl. at 61.)

It is not entirely clear that the Fourth Amendment countenances a "fabrication of evidence" claim aside from one couched in terms of malicious prosecution. Moreover, insofar as this claim is based on Russ's grand jury testimony, grand jury witnesses, again, "enjoy absolute immunity from suit based on their grand-jury testimony," including "law enforcement officers who have 'conspired to present false testimony.'" *DiPasquale v. Hawkins*, 748 F. App'x 688, 692 (6th Cir. 2018) (first citing *Rehberg*, 566 U.S. at 369; and then quoting *King*, 852 F.3d at 584). Even if that were not the case, the Complaint does not allege that Russ fabricated evidence or testified falsely. Instead, it alleges that she failed to disclose the absence of inculpating evidence. This is not sufficient.

Typically, a stand-alone fabrication of evidence claim is "rooted in the Due Process Clause of the Fourteenth Amendment," and it requires the plaintiff to "show that the defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the *jury*.'" *Tanner v. Walters*, 98 F.4th 726, 732–33 (6th Cir. 2024) (emphasis added) (quoting *Mills*, 869 F.3d at 484); *see also Anderson v. Knox Cnty.*, No. 22-5280, 2023 WL 4536078, at *8 (6th Cir. July 13, 2023) (distinguishing fabrication-of-evidence claims from malicious prosecution claims and acknowledging that the former violates a defendant's right to a fair trial as guaranteed by the Fourteenth Amendment's Due Process Clause). If the claim is construed as brought under the Fourteenth Amendment, it is subject to dismissal, first, because the claim is not based on trial testimony but, instead, on grand jury testimony, so it does not implicate the plaintiffs' right to a fair trial. And, again, the plaintiffs do not actually allege the fabrication or falsification of evidence or a reasonable likelihood that such fabricated evidence "critically influenced" the prosecutor's "decision to prosecute." *Frost v. New*

*York City Police Dep't*, 980 F.3d 231, 248 (2d Cir. 2020).

The court finds that the Complaint fails to state a stand-alone claim under the Fourth or Fourteenth Amendment for fabrication of evidence.

### 4. *Conspiracy (Count VII)*

Conspiracy claims must be pleaded with some degree of specificity. *Hamilton v. City of Romulus*, 409 F. App'x 826, 835–36 (6th Cir. 2010) (citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). Vague and conclusory allegations unsupported by material facts are insufficient. *Id.* The Complaint here fails under this standard to allege sufficient facts to establish Russ's or O'Neil's engagement in a conspiracy to violate the plaintiffs' constitutional rights.

Moreover, because the Complaint fails to state a colorable § 1983 claim as to Russ or O'Neil, it also fails to state a colorable claim based on their involvement in a conspiracy to violate the plaintiffs' constitutional rights. *Accord Price v. Montgomery Cnty.*, 72 F.4th 711, 726 (6th Cir. 2023) (affirming summary judgment on conspiracy claim where the plaintiff failed to establish the underlying constitutional violation), *cert. denied*, 144 S. Ct. 2499 (2024); *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) ("Because there was no Fourth Amendment violation, there is no conspiracy claim based on State Defendants' acts.").

For both of these reasons, this claim will be dismissed as well.

### B. The State Law Claims

#### 1. *State Law Malicious Prosecution*

"The elements for malicious prosecution are the same regardless of whether the underlying action was criminal or civil." *Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741, 746 (Tenn. 2023) (citation omitted). To state a claim for malicious prosecution under Tennessee law, the plaintiff must allege facts sufficient to show that "the defendant instituted or continued a judicial proceeding against the plaintiff (1) without probable cause and (2) with malice and that

(3) the proceedings terminated in the plaintiff's favor." *Id.* (internal quotation marks and citation omitted). That is, Tennessee law differs from federal law insofar as it requires actual malice. Malice in this context is defined as having any improper motive. *Kelley v. Tomlinson* 46 S.W.3d 742, 746 (Tenn. Ct. App. 2000).

There are no non-conclusory facts in the Complaint alleging O'Neil's state of mind, and no facts whatsoever suggesting that he had an improper motive. On this basis alone, the state malicious prosecution claim against O'Neil is subject to dismissal for failure to state a claim.

With respect to both Russ and O'Neil, "Tennessee recognizes a state-law qualified-immunity defense to state tort actions against government officers for their discretionary functions." *Hammond-Beville v. Landis*, No. 21-5498, 2022 WL 910569, at *5 (6th Cir. Mar. 29, 2022) (citing *Youngblood v. Clepper*, 856 S.W.2d 405 (Tenn. Ct. App. 1993). The defense is analogous to the qualified-immunity defense recognized under federal law for state officers sued under 42 U.S.C. § 1983, the primary difference being that, in analyzing state qualified immunity, the court must determine whether the defendant "committed a clearly established state tort violation." *Id.* "Otherwise, the federal and state qualified-immunity analyses are 'the same'" *Id.*; *see also Cawood v. Booth*, No. E2007-02537-COA-R3-CV, 2008 WL 4998408, *11–12 (Tenn. Ct. App. Nov. 25, 2008) (citing federal law as relevant to whether the defendants were entitled to qualified immunity for state law torts); *Rogers v. Gooding*, 84 F. App'x 473, 477 (6th Cir. 2003) (affirming the district court's grant of qualified immunity on Tennessee assault and battery claims, noting that immunity to § 1983 claims derived from common law immunity).

Thus, the relevant question for qualified immunity purposes is whether existing precedent was sufficient to put a reasonable state officer on notice that the events in question could constitute malicious prosecution. The court finds, for the same reasons as those articulated in connection

with the dismissal of the federal malicious prosecution claim, that Russ and O'Neil are entitled to qualified immunity based on the actions as alleged in the Complaint. Russ conducted an investigation, turned over her investigative file and Case Summary to prosecutors, and testified at the grand jury proceedings and at trial and sentencing. Russ is not alleged to have testified falsely or fabricated evidence. She is not alleged to have ever claimed that Hancock violated a visitation order. O'Neil approved the investigation and reviewed the file before it was turned over to prosecutors. While the tort of malicious prosecution is well established, the plaintiffs have not pointed to any remotely analogous cases in which an officer who provided true information to prosecuting attorneys and encouraged them to pursue charges was liable for malicious prosecution under state law. Russ and O'Neil are entitled to qualified immunity on this claim.

### 2. Conspiracy

The Complaint does not allege facts establishing a conspiracy with sufficient particularity, as set forth above in connection with the § 1983 conspiracy. This claim, too, will be dismissed for failure to state a claim.

## IV. CONCLUSION

This is a difficult and troubling case, and the court recognizes that the plaintiffs suffered the injustice of being prosecuted for conduct that all of the relevant state actors apparently believed should constitute a crime but that the legislature had not (yet) seen fit to define as such. The ordinary bulwarks against poor police work—the prosecutors and the judge—failed in their duties by effectively rewriting the law to match the circumstances, to the plaintiffs' detriment. But the law provides no recourse against prosecutors and judges acting in their respective prosecutorial and judicial capacities, and the allegations here are simply insufficient to establish that the police officer defendants violated the plaintiffs' constitutional or other rights.

For the reasons set forth herein, the City Defendants' Motion for Judgment on the Pleadings (Doc. No. 55) will be granted in its entirety.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge